IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PRESTIGE MAGAZINE CO., INC.
d.b.a. PRESTIGE COMMUNICATIONS,
a corporation organized and existing
under the laws of West Virginia,

                Plaintiff,

v.                                      CIVIL ACTION NO. 3:09-0314

PANAPRINT, INC., a corporation organized
and existing under the laws of Georgia,
RETTE COLLINS, and WANZIE COLLINS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction (doc. 8) of Defendant Panaprint, Inc. For the following reasons, the Court **DENIES** the motion.

**I. FACTS**

Defendant is a commercial printer organized under the laws of Georgia, with its principal place of business in Macon, Georgia. Plaintiff Prestige Magazine Co., Inc., is a commercial print broker and publisher of free real estate guides. It is organized under the laws of West Virginia, with its principal place of business and headquarters in Cross Lanes, West Virginia.

In or around November of 2001, Plaintiff's president, Rex Eagon, contacted various printing companies that advertised on the National Association of Real Estate Publishers website. Mr. Eagon

hoped to find a printing company to print Prestige's real estate guides. One of the companies contacted by Mr. Eagon was Defendant.

Mr. Eagon spoke with Rette Collins, Defendant's Vice President of Sales. Mr. Collins asked to come to West Virginia to discuss a possible business relationship between Plaintiff and Defendant, and on approximately November 29, 2001, he flew to Charleston, West Virginia and met with Mr. Eagon at Plaintiff's headquarters in Cross Lanes. The parties agreed that Defendant would produce materials for Plaintiff on a trial basis prior to entering into any contract.

In late January 2002, Mr. Eagon had a flight layover in Atlanta, Georgia. Having previously been invited by Defendant to visit, Mr. Eagon drove to Macon and toured Defendant's facility. Plaintiff asserts that the sole purpose of the visit was to view Defendant's equipment and that "[n]o contractual arrangement was agreed to or negotiated at this time . . . ." *Plaintiff's Response*, at p. 7. According to Plaintiff, the parties only entered into a contract after a series of back and forth email, fax and telephone communications. As part of the contract, Defendant requested bank and trade references from Plaintiff. Two of the four references provided by Plaintiff were banks located within this district.

Under the contract, all printed materials were provided f.o.b. Macon, Georgia. Until some time in 2008, Plaintiff apparently picked up the materials at Defendant's Macon facility through third party contractors. After that time, Defendant began shipping at least some materials to West Virginia. Shipping costs were included in the invoices sent to Plaintiff in West Virginia.

The contract further provided that base printing prices would be adjusted, with a thirty-day notice, according to fluctuating paper prices, whether paper prices increased or decreased. Plaintiff maintains that Defendant raised printing prices when the price of paper increased, but, after February

of 2003, it failed to reduce prices when the price of paper decreased. Accordingly, Plaintiff filed suit for breach of contract in this Court on March 27, 2009.

## II. LEGAL STANDARD

"[T]he West Virginia long-arm statute is coextensive with the full reach of due process . . . ." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). "To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not 'offend traditional notions of fair play and substantial justice.'" *Vass v. Volvo Trucks N. Am., Inc.*, 304 F.Supp.d 851, 854 (S.D. W. Va. 2004) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion . . . rel[ying] on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Celotex Corp.*, 124 F.3d at 628 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs*, 886 F.2d at 676). In all, there is a "very low threshold showing necessary to establish a prima facie case of personal jurisdiction" in West Virginia. *Vass,* 304 F. Supp. 2d at 855.

## III. DISCUSSION

The inquiry into the existence of personal jurisdiction requires application of a two-pronged test. First, the Court must consider whether the "out-of-state person ha[s] engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). Second, "if that initial test is met, a court must still determine whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice." *Id.*

### A. Purposefully Directed Action

The first consideration is whether "the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state[.]" *Id.* at 945-46. In this case, Defendant has established a substantial connection with West Virginia through a variety of actions directed here. Perhaps foremost among these is the fact that Defendant's Vice President of Sales, Rette Collins, traveled to West Virginia from Georgia in November of 2001 to discuss entering into a business relationship with Plaintiff. In that meeting, the parties agreed that Defendant would print materials for Plaintiff on a trial basis. Some time later, after a series of back and forth email, fax and telephone exchanges, the parties entered a more permanent contractual agreement. Presumably, these exchanges entailed not only Plaintiff directing communications to Defendant in Georgia, but also Defendant sending emails and faxes and making phone calls to Plaintiff in West Virginia. As part of the process of finalizing the contract, Defendant required Plaintiff to provide bank and trade references. In response, Plaintiff provided four references, including two West Virginia banks. After the contract

had been formalized, materials were primarily provided f.o.b. in Georgia, although, later, Defendant also sent materials to West Virginia. Any shipping costs were added to the invoices that Defendant regularly sent to Plaintiff in West Virginia.

Defendant seeks to characterize these activities as only "'single or isolated items of activities,'" *Bashaw v. Hotel Mgmt. Co., Inc.*, 872 F. Supp. 323, 326 (S.D. W.Va. 1995) (quoting *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (other internal quotations omitted), or "'random,' 'fortuitous,' or 'attenuated' contacts," *Felman Prod. Inc. v. Bannai*, 517 F. Supp. 2d 824, 828 (S.D. W.Va. 2007) (quoting *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 475 (1985)), and impliedly compares them to "mail solicitations accompanied by an occasional visit to the forum state by a group sales representative." *Faulkner v. Carowinds Amusement Park*, 867 F. Supp. 419, 424 (S.D. W.Va. 1994). However, the Court believes that Defendant's activities directed toward West Virginia are considerably more extensive than Defendant's characterization suggests. In fact, Defendant's activities are similar to those of defendants over which jurisdiction has previously been exercised in this district.

For example, in *Eastern Marketing Corp. v. Texas Meridian Production Co., LTD*, out-of-state defendants entered into a contract to sell gas to a West Virginia plaintiff. 798 F. Supp. 363, 365 (S.D. W.Va. 1992). As in this case, a representative of the defendants traveled to West Virginia "for the purpose of discussing business from [the West Virginia company]." *Id.* Also similar to this

case, "[f]ollowing the meeting the parties exchanged letters and telephone calls, ultimately concluding in the . . . contract."[1][2] *Id.*

The defendants argued that the single visit by its representative to the plaintiff in West Virginia was "casual and [did] not establish sufficient minimum contacts." *Id.* at 366. However, the court quickly rejected this argument, finding it to be "without merit." *Id; see also P.M. Enters. V. Color Works, Inc.*, 946 F. Supp. 435, 438-39 (S.D. W.Va. 1996) (finding personal jurisdiction over the defendants, in part because they sent representatives to West Virginia to solicit a business contract with the plaintiff). In fact, the court observed that "it is not necessary that the Defendants ever actually enter the forum state's territory. So long as the Defendants purposefully directed their [activities] toward the forum state[] and the litigation arises from those activities, then due process is satisfied." *Id.* at 365. In any event, the court found that the defendants' contract with the plaintiff "manifest[ed] a willingness to conduct business within West Virginia" and that the defendants "'purposefully' availed themselves of the privilege of doing business in West Virginia by creating continuing obligations between themselves and a resident West Virginia plaintiff." *Id.* at 365-66.

---

[1]The defendants, at least, also sent faxes. In this case, the parties exchanged emails, faxes and telephone calls.

[2]The material facts of *Eastern Marketing* and this case differ slightly in that the contract in *Eastern Marketing* contained a West Virginia choice of law provision, while the contract in this case does not. The court in *Eastern Marketing* found this provision to "carry some weight" in establishing personal jurisdiction over the defendants, but also concluded that it was "not conclusive." 798 F. Supp. at 365. While the Court does not ignore this difference, it also believes that the exercise of personal jurisdiction over Defendant remains appropriate, notwithstanding the lack of a West Virginia choice of law provision in the contract in this case. Clearly, a West Virginia choice of law provision in any contract between the parties is not a prerequisite to the exercise of personal jurisdiction in this district. *See P.M. Enters.*, 946 F. Supp. at 439 (finding personal jurisdiction over the defendants, notwithstanding the lack of a West Virginia choice of law provision and, in fact, the presence of an Alabama forum selection clause).

On balance, there was nothing "single[,] isolated," *Bashaw*, 872 F. Supp. at 326 (quoting *Nichols*, 991 F.2d at 1199) (other internal quotations omitted), "'random,' 'fortuitous,' or 'attenuated,'" *Felman Prod. Inc.,* 517 F. Supp. 2d at 828 (quoting *Burger King*, 471 U.S. at 475), about Defendant's activities. Defendant sent a high-ranking official to West Virginia in the hopes of establishing a business relationship with a West Virginia corporation. The contract was formalized through a series of communications directed at West Virginia, and, later, Defendant shipped materials to West Virginia and added these costs to the invoices it regularly sent to West Virginia. Through these purposefully directed actions, Defendant has created a "substantial connection" with West Virginia. *Lesnick*, 35 F.3d at 945. The first prong of the test for personal jurisdiction has been satisfied.

**B. Fair Play and Substantial Justice**

A finding of a substantial connection between the defendant and the forum state is not the end of the inquiry. "[T]he exercise of jurisdiction based on [the defendant's] minimum contacts [still must] not offend traditional notions of fair play and substantial justice . . . ." *Id.* at 946. The factors to be considered include: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Id.*

Defendant repeats its argument that it had only "single or isolated items of activities" in West Virginia, indeed making it offensive to traditional notions of fair play and substantial justice to exercise jurisdiction over it. *Bashaw*, 872 F. Supp. at 326 (quoting *Nichols*, 991 F.2d at 1199)

(other internal quotations omitted). Defendant contends "that the majority of the actions that relate to this lawsuit occurred [in Georgia,]" and thus "[p]ublic policy and the interests of the state of Georgia in resolving this dispute outweigh West Virginia's interests in keeping the action within its courts." *Defendant's Motion to Dismiss*, at p. 7. In support of this argument, Defendant notes that its principal place of business is in Georgia, the printed materials were produced in Georgia and, for much of the period at issue, materials were shipped f.o.b. Macon, Georgia. Defendant further claims that contract negotiations were conducted "almost exclusively" in Georgia. *Id.*

Most of these facts are not controverted by Plaintiff, yet the fact remains that the exercise of jurisdiction is appropriate. Defendant's principal place of business is indeed in Georgia, but Plaintiff's is in West Virginia. Obviously, the printed materials were produced at Defendant's facility in Georgia, and Plaintiff generally picked them up there through its contractors. However, it is also true that Defendant later shipped materials to Plaintiff in West Virginia and included these costs on the invoices it sent Plaintiff, again in West Virginia. Finally, Plaintiff disputes that contract negotiations were conducted in Georgia. According to Plaintiff, its representative, Mr. Eagon, only went to Defendant's facility in Georgia on a chance visit to view Defendant's equipment. "No contractual arrangement was agreed to or negotiated at this time[;]" rather, the contract was subsequently negotiated through a series of emails, faxes and telephone calls. *Plaintiff's Response*, at p. 7. The Court is obligated to view these assertions in the light most favorable to Plaintiff.

Surely, there will be some burden on Defendant in traveling from Georgia to West Virginia to defend this action, but as Plaintiff correctly points out, this journey will merely constitute a repeat trip of the one Defendant made in November of 2001 to solicit business from Plaintiff. By coming to West Virginia in an attempt to enter into a contract with a West Virginia corporation, and

subsequently directing various communications here in a continued attempt to finalize that contract, it should have been foreseeable to Defendant that it risked being summoned to return here to defend itself in a dispute arising therefrom. In sum, the Court finds the explanation for the exercise of jurisdiction in *Eastern Marketing* applicable in this case as well:

> While the Defendants will incur some burden from litigating in West Virginia this burden must be balanced against the Defendants' purposeful availment of the benefits and detriments of contractual obligations under West Virginia law. West Virginia also has a strong interest in providing a forum for a claim such as this one, where an alleged contract breach has detrimentally impacted a West Virginia corporation. The Court concludes that the Defendants have failed to present the compelling case necessary to defeat an otherwise proper exercise of personal jurisdiction. In so holding, the Court has weighed consideration such as fundamental fairness and the Defendants' expectation of suit in West Virginia. Accordingly, the Defendants' motion to dismiss for lack of personal jurisdiction is denied.

798 F. Supp. at 366. For these reasons, Defendant's motion should fail. The exercise of personal jurisdiction over Defendant in this case is appropriate.

## IV. CONCLUSION

Pending before the Court is the Motion to Dismiss (doc. 8) of Defendant Panaprint, Inc. For the foregoing reasons, the Court **DENIES** the motion.

ENTER: July 8, 2009

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE