**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

PRESTIGE MAGAZINE CO., INC.
d.b.a. PRESTIGE COMMUNICATIONS,
a corporation organized and existing
under the laws of West Virginia,

               Plaintiff,

v.                                     CIVIL  ACTION  NO.  3:09-0314

PANAPRINT, INC., a corporation organized
and existing under the laws of Georgia,
RETTE COLLINS, and WANZIE COLLINS,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Panaprint, Inc.'s Motion for Summary Judgment

(Doc. 72).  For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

**Background**

Defendant is a commercial printer organized under the laws of Georgia, with its principal

place of business in Macon, Georgia.  Plaintiff Prestige Magazine Co., Inc., is a commercial

print broker and publisher of free real estate guides.  It is organized under the laws of West

Virginia, with its principal place of business and headquarters in Cross Lanes, West Virginia.

In or around November of 2001, Plaintiff's president, Rex Eagon, contacted various

printing companies that advertised on the National Association of Real Estate Publishers

website.  Mr. Eagon hoped to find a printing company to print Prestige's real estate guides.  One

of the companies contacted by Mr. Eagon was Defendant.  Mr. Eagon spoke with Rette Collins,

Defendant's Vice President of Sales.  Mr. Collins asked to come to West Virginia to discuss a

possible business relationship between Plaintiff and Defendant, and on approximately November

29, 2001, he flew to Charleston, West Virginia and met with Mr. Eagon, Arnold Bowen,

Prestige's Account Manager, and other employees at Plaintiff's headquarters in Cross Lanes.

The parties appear to have agreed that Defendant would produce materials for Plaintiff on a trial

basis for approximately six months, during which time the parties would negotiate final terms.

In May of 2002 the parties entered into a more permanent relationship, which lasted

approximately eight years until around March, 2009.  Communications were ongoing between

the parties throughout the relationship, including a regular exchange of price grids that governed

the costs charged to Prestige.  The price grids established, among other stipulations, that the

production prices used to calculate each grid would be good for two years, with cost of living

increases based on national standards, and that paper prices would be subject to change with a

thirty day written notice.  This continued until March, 2009, when Mr. Eagon contacted

Panaprint to obtain confirmation of its paper prices by reviewing the invoices from Panaprint's

suppliers.  When Mr. Wanzie Collins denied this request, the relationship terminated, and

subsequently Prestige filed this action.

At issue in this case is whether the parties entered in to a contract, and, if so, whether the

contract is evidenced by writings sufficient to satisfy the Statute of Frauds.  Most contentiously

debated is whether or not the alleged contract between the parties included a term limiting the

adjustment of prices to a pass through of increases and decreases in the price of paper.  Prestige

alleges that the contract provided that base printing prices would be adjusted, with a thirty-day

notice, solely according to fluctuating paper prices, whether paper prices increased or decreased.

Plaintiff maintains that Defendant raised printing prices when the price of paper increased, but it failed to reduce prices when the price of paper decreased.  Accordingly, Plaintiff filed suit for breach of contract and fraud in this Court on or around March 27, 2009.  Around the same time, Panaprint filed a collection action against Prestige in Georgia state court for the outstanding balance owed by Prestige.  This action was removed to federal court, and subsequently transferred to this Court and consolidated with Prestige's claims.  Panaprint has now moved for summary judgment on both Prestige's claims and its own counterclaim.  Both parties, as a preliminary matter, seek this Court's determination of which state's law governs their business relationship—Georgia or West Virginia.  The Court will first make this determination, and then turn to the merits of the Defendant's motion.

### Choice of Law Analysis

To determine whether Prestige has asserted sufficient factual basis for its breach of contract and fraud claims, the law governing the relationship between Prestige and Panaprint must first be determined.  Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)*,* the Court must apply West Virginia choice of law rules, as this Court sits in West Virginia.  The West Virginia Supreme Court of Appeals has held that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state."  *Gen. Elec. Co. v. Keyser*, 275 S.E.2d 289, 292 (W. Va. 1981) (quoting *Mich. Nat'l Bank v. Mattingly*, 212 S.E.2d 754, 756 (W. Va. 1975)).  Known as *lex loci delicti*, this rule is the "'cornerstone' of West Virginia's conflicts doctrines."  *McGough v. Nalco Co.*, 496 F. Supp. 2d 729, 741 (N.D. W. Va. 2007) (quoting *Paul v. Nat'l Life*, 352 S.E.2d 550, 555 (W. Va. 1986)).  "Generally, a contract is considered as entered into at the place where the offer is accepted, or where

the last act necessary to complete it is performed." *Three States Coal Co. v. Superior Elkhorn By-Products Coal Co.*, 158 S.E. 661, 663 (1931) (citing *Galloway v. Ins. Co.*, 31 S.E. 969, 970 (W. Va. 1898)). In the case where an offer is made in one state, but accepted in another, "the acceptance completes the contract, and the place of the contract is where the acceptance of the offer is mailed or telegraphed." *Id.* (internal citations omitted).

In some cases, especially those where the formation of the contract occurred in one state, and the breach, or, the performance, arose in a different state, West Virginia courts have applied the *Restatement (Second) of Conflicts*. In *New v. Tac & C Energy, Inc.*, 355 S.E.2d 629 (W. Va. 1987), a contract for services case, the West Virginia Supreme Court of appeals stated the following regarding the traditional rule of *lex loci delicti*:

> [I]f the contract had been made and performed totally in West Virginia, there would be no question about which law would apply. In this case, however, the contract was made in West Virginia but the performance was split between two states. . . . Of course, we cannot apply the law of both states simultaneously. Instead we must decide which state's law should apply. Because [*lex loci delicti*] does not address the situation where the performance and the contracting are not in the same state, we are left with no clear provision of law governing this situation.

*New*, 355 S.E.2d, at 630–31 (internal citation omitted). The West Virginia Supreme Court therefore adopted the *Restatement (Second) of Conflicts § 196* for contracts for personal services. *Id.* at 631. Under *§ 196*, "[t]he validity of a contract for the rendition of services and the rights created thereby are determined . . . by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered . . . ." However, where a state has a more significant relationship to a particular issue with regard to the contract under the general principles of conflict of laws stated in *§ 6* of the *Restatement*, that state's local law applies. *Restatement (Second) of Conflict of Laws*, § 196. These principles are:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." *Id.* § 188, cmt. d (incorporated into § 196, cmt. c).

Here, the alleged contract was for the rendition of services, as the final product, printed magazines, were incidental to the main thrust of the contract—obtaining Panaprint's printing services. *See, e.g.*, *Elkins Manor Associates v. Eleanor Concrete Works*, 396 S.E.2d 463, 468–69 (W. Va. 1990) (citing the predominant factor test of *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974), that where the contract's "predominant factor . . . reasonably stated, is the rendition of service, with goods incidentally involved" it is a contract for services); *D.N. Garner Co., Inc. v. Georgia Palm Beach Aluminum Window Corp.*, 504 S.E.2d 70, 73 (Ga. Ct. App. 1998) (citing a similar predominant element test). The initial negotiations between Prestige and Panaprint occurred in November 2001 during Mr. Rette Collins's visit to Prestige's facility in West Virginia. A six-month trial period appears to have been agreed upon during that visit. Subsequent terms and agreements were negotiated by e-mail and telephone between Prestige and Panaprint, with a final agreement being made in approximately May, 2002. Therefore, if there is a contract that governed the relationship between the parties, it was negotiated and initially agreed to in West Virginia during the November, 2001 meeting. If a final act was needed to create a binding contract, it was the acceptance by Prestige of Panaprint's proposal to meet Prestige's printing needs. Therefore, on the

evidence thus far presented to the Court, it appears the alleged contract was negotiated and made

in West Virginia. *Three States Coal Co.*, 158 S.E. at 663.

Performance of the alleged contract, however, occurred in Georgia at Panaprint's printing

facility. Therefore, the traditional rule of *lex loci delicti* does not facilitate a straightforward choice

of law analysis. Instead, as in *New*, the contract appears to be split between its negotiation and

formation in West Virginia and its performance in Georgia. Therefore, pursuant to *§ 196* of the

*Restatement*, Georgia law applies, unless the principles of *§ 6* indicate West Virginia has a more

significant relationship to a particular issue relating to the contract. In *New*, the court found that

while performance was contracted to occur in Kentucky, West Virginia had a more significant

relationship to the contract and, therefore, its local law should be applied. There, both parties were

residents of West Virginia, the contract was made in West Virginia, and it was partially performed

in the state. *New*, 355 S.E.2d at 631.

Here, there is no dispositive difference in either state's local law governing whether a

contract was formed and the construction of the alleged contract, and, therefore, neither state has a

greater interest in having its local law applied. Both West Virginia and Georgia law allow the

admission of parol evidence, particularly in cases where the alleged contract was oral or only

partially written. Where there is ambiguity in the construction of a contract, parol evidence is

admissible in both states. *Compare Poling v. Pre-Paid Legal Services, Inc.*, 575 S.E.2d 199, syl.

pt. 11 (W. Va. 2002) *with Ga. Code § 13-2-2*. The Defendant has raised the defense of Statute of

Frauds. In both states, the Statute of Frauds applies to those contracts where performance is not

possible within one year following contract formation. *Compare W. Va. Code § 55-1-1(f) with Ga.*

*Code § 13-5-30(5).* The parties are contesting whether or not an enforceable contract was formed

and how the prices charged by Panaprint were to be determined.  The former is not a performance issue, which would be governed by Georgia law, but instead is related to the formation of the alleged contract.  As discussed above, negotiation and formation occurred in West Virginia.  Mr. Rette Collins traveled to West Virginia to present a proposed business arrangement to Prestige in order to obtain Prestige's business.  The original governing six-month trial period was agreed upon in West Virginia.  The terms governing price calculation were allegedly first discussed during the meeting in West Virginia.  Therefore, West Virginia has a more significant interest in the contractual issues to be determined in this case.  For these reasons the Court **FINDS** that West Virginia has the most significant relationship to the contractual issues contested by the parties, and, therefore, its local law governs the adjudication of that aspect of this case.

There is, however, a difference in the states' local law establishing the elements for a fraud claim; Georgia has a scienter requirement.  *Compare, e.g.*, *Holmes v. Grubman*, 691 S.E.2d 196, 198 (Ga. 2010) *with Poling*, 575 S.E.2d at syl. pts. 12, 13.  As the acts of fraud alleged occurred in the state of performance, Georgia, and, under *§ 196* Georgia law applies to a contract for services, the Court **FINDS** that Georgia local law governs the adjudication of the fraud claim.

**Defendant's Motion for Summary Judgment**

In its Motion to Dismiss, Defendant moves to have the case dismissed in its entirety or, in the alternative, to have Plaintiffs' claims for fraud and punitive damages dismissed.  These will be addressed in turn.

**I.      Summary Judgment Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ.*

*P*. 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence

and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the Court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable

to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential

element of his or her case and does not make, after adequate time for discovery, a showing sufficient

to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving

party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in

support of his or her position. *Anderson*, 477 U.S. at 252.

## II.       Plaintiffs' Claim for Breach of Contract and Defendant's Counterclaim

The Defendant moves to have the Plaintiffs' claims dismissed in their entirety on the basis

of the Statute of Frauds, which requires a writing when there is "any agreement that is not to be

performed within a year." *W. Va. Code § 55-1-1(f)*.  Further, Defendant contends that no contract

was ever entered into, and, therefore, a breach of contract claim cannot move forward.  These issues

cannot be decided at this juncture as there are key material facts still in dispute in this case.  For

example, the role of the price grids provided by Panaprint to Prestige in establishing the relationship

cannot be characterized by the evidence presented in the briefing before the Court.  Further, the

affidavits and depositions provided by Mr. Eagon and Mr. Rette Collins outlining the agreement on

the determination of prices are in contradiction. *Compare* Aff. of Rex Eagon, Ex. 1 to Pls.' Resp.

to Mot. Summ. J. *with* Dep. of Rette Collins, Ex. 2 to Pls.' Resp. to Mot. Summ. J, at 59–64. These

basic facts must be established before the breach of contract claim can be adjudicated. Taking the

evidence in a light most favorable to the non-moving party, there are still material facts at issue, and,

therefore, Defendant's Motion for Summary Judgment as to the breach of contract claim is

**DENIED**. Accordingly, Defendant's motion on its counterclaim is also **DENIED**.

### III.    Plaintiffs' Claim of Fraud

In Georgia, the elements for a claim of fraud are "a false representation by defendant,

scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff,

and damage to plaintiff." *Stiefel v. Schick*, 398 S.E.2d 194, 195 (Ga. 1990) (quoting *Crawford v.*

*Williams*, 375 S.E.2d 223, 224 (Ga. 1989)). Prestige has been unable to demonstrate that Panaprint

had the requisite scienter or intent to satisfy the elements for a claim of fraud. In pleading fraud,

Prestige did not differentiate between its breach of contract claim and its fraud claim aside from

asserting that Panaprint intentionally did not pass through the decreases in paper prices to Prestige.

*See* Compl. Section VI ¶ 1. In its response to the Motion for Summary Judgment, Prestige points

to a broad array of e-mails and other correspondence to support its claim for breach of contract, but

did not provide any factual support for its fraud claim. During the hearing on the motions held on

October 18, 2010, when questioned by the Court for evidence supporting its fraud claim, Prestige

was unable to provide any concrete evidence pointing to an intent to defraud by the Defendant or

to any knowledge by Defendant that its representations regarding pricing were false. Taking the

evidence in a light most favorable to the non-moving party, the Plaintiff has failed to make a

showing sufficient to establish essential elements of its fraud claim. For this reason, this claim is hereby **DISMISSED**.

### IV.      Plaintiffs' Claim for Punitive Damages

In West Virginia, a breach of contract action generally cannot sustain an award for punitive damages. *C.W. Dev. v. Structures, Inc.*, 408 S.E.2d 41, 45 (W. Va. 1991). Instead, "the wrongful act must have been done maliciously, wantonly, mischievously, or with criminal indifference to civil obligations. A wrongful act, done under a bona fide claim of right, and without malice in any form, constitutes no basis for such damages." *Warden v. Bank of Mingo*, 341 S.E.2d 679, syl. pt. 2 (W. Va. 1985) (quoting *Jopling v. Bluefield Water Works & Improvement Co.*, 74 S.E. 943, syl. pt. 3 (W. Va. 1912)). Here, Plaintiffs have established no malice on the part of Panaprint. There was no intentional tort committed by the Defendant. Therefore, Plaintiffs' claim for punitive damages is **DISMISSED**.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Plaintiffs' claims of fraud and for punitive damages are hereby **DISMISSED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:      October 26, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-10-